In the

# United States Court of Appeals
### For the Seventh Circuit

No. 01-3302

DARIUS SCOTT,

*Plaintiff-Appellant,*

v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 99 C 4651—**Sidney I. Schenkier**, *Magistrate Judge.*

ARGUED FEBRUARY 11, 2002—DECIDED JULY 22, 2002

Before RIPPLE, DIANE P. WOOD and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Darius Scott, a minor, appeals the order of the district court[1] upholding the Social Security Administration's ("SSA") denial of his application for sup-

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), the parties consented that a federal magistrate judge conduct any and all proceedings as well as order entry of final judgment in their case. Accordingly, we refer to the magistrate judge as the district court throughout this opinion.

plemental security income ("SSI") childhood benefits. More precisely, Darius submits that the Administrative Law Judge ("ALJ") who denied the application for benefits failed to articulate adequately the basis for the SSA's determination. For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand this case for further proceedings.

# I

# BACKGROUND

## A. Facts

Gwendlyn Jones gave birth to Darius on August 29, 1990, in Chicago, Illinois. Throughout Darius' infancy and early childhood, Ms. Jones observed recurring problems in his behavior and development. In particular, her son suffered from erratic sleeping patterns, often resting for only four hours a day. He also possessed a short attention span and exhibited signs of overactivity. Moreover, based on her observations, Ms. Jones believed that Darius' language skills lagged behind those of his peers. On January 24, 1994, citing these difficulties in her son's development, Ms. Jones applied for SSI childhood benefits on behalf of Darius.

During the pendency of the application, Ms. Jones authorized physicians from the University of Chicago to conduct an extensive psychological examination of then three-and-a-half-year-old Darius. Over the course of eight visits between February and April 1994, Dr. Lauren Wakschlag and a colleague observed, interacted with and tested Darius. According to their observations, he never demonstrated any unusually high levels of activity for a child of his age. This observation led them to conclude that his behavior might result from environmental factors. However, although

Darius frequently bore "a bright affect" throughout the evaluation, Dr. Wakschlag also noted that "[h]e spoke very little, with poor articulation, and appeared not to understand questions, nodding in response to such questions as, 'what's your name?' and 'what's that?'." Admin. R. at 99, Ex.16. Standardized tests corroborated this observation. In particular, Dr. Wakschlag administered the McCarthy Scales of Children's Ability Test ("McCarthy Test"). Designed to measure a child's developmental functioning, the McCarthy Test gauges various factors, including the child's quantitative, memory, language and motor skills. Although his overall scores indicated that Darius functioned in the "Borderline Range,"[2] he yielded exceptionally low scores in the verbal, memory and quantitative components of the test. The physician, however, cautioned that Darius' "weakness in language significantly comprised [sic] his overall performance on the test making it difficult to understand many of the instructions." Admin. R. at 80, Ex.15. In particular, his language deficiencies may have deflated inaccurately his memory and quantitative scores. In conclusion, Dr. Wakschlag stated that Darius "exhibit[ed] significant delays in both receptive and expressive language skills," Admin. R. at 81, Ex.15, and diagnosed him as suffering from Developmental Expressive and Receptive Language Disorder. *See* Admin. R. at 101, Ex.16.

While the University of Chicago group evaluated Darius, a second physician, Dr. Virginia Bishop-Townsend of the

---

[2] Darius' examiners did not elucidate precisely the meaning of the term "Borderline Range." However, shortly after using this phrase, Dr. Wakschlag stated: "His performance on the test overall yielded a General Cognitive Index of 50 which places him below the 1st percentile for children his age." Admin. R. at 80, Ex.15.

Lake Shore Medical Center, performed a more limited re-
view of his condition. During the thirty-two minute evalua-
tion, Dr. Bishop-Townsend noted that Darius was extremely
active, climbing about the room and demonstrating "little
fear or respect for his mother." Admin. R. at 74, Ex.13.
She ultimately concluded that he suffered from hyperactiv-
ity.

Shortly thereafter, the SSA requested that Dr. Carl
Hermsmeyer, a psychologist, review Darius' medical files,
including Dr. Bishop-Townsend's report, and assess the
child's functional capacity. After examining these records,
Dr. Hermsmeyer concurred in Dr. Bishop-Townsend's find-
ings, but also noted that Darius possessed a moderate im-
pairment in his personal behavior.

One year later, June 1995, Darius' mother requested that
the University of Chicago group reevaluate her son. Dr.
Jane Nofer, a clinical psychologist, and Dr. Catherine Lord,
a professor of psychiatry, administered another battery
of standardized tests to Darius. Four-and-a-half-year-old
Darius again performed poorly on the verbal components
of these examinations. For example, results from the Dif-
ferential Abilities Scale ("DAS"), an intelligence test, yielded
a verbal cluster score of 68 and a general cognitive score
of 69, placing Darius "at the upper end of the mildly
retarded range of intellectual functioning." Admin. R. at
111, Ex.18. Darius faired better on nonverbal components
of the exam, placing him in the borderline range of intelli-
gence with regard to these skills. Other tests produced sim-
ilar results,[3] prompting the evaluator to conclude that

---

[3] For example, on the Peabody Picture Vocabulary Test, Darius
scored a 44, placing him in the moderately delayed range with an
age equivalent score of two years, five months. The Vineland
(continued...)

> Darius is a 4 ½ year old boy who is currently function-
> ing at the upper end of the mild range of mental retar-
> dation. His nonverbal skills are slightly stronger than
> his verbal skills. Darius's difficulties with attention and
> impulsivity are clearly problematic, but I found him to
> be redirectable . . . .

Admin. R. at 113, Ex.18.

## B. Administrative and District Court Proceedings

### 1.

During January 1994, Ms. Jones, on behalf of Darius, sub-
mitted an application for SSI childhood benefits with the
SSA. The administrative agency denied both Darius' initial
application for benefits as well as his request for reconsid-
eration. Invoking his right to further review, Darius re-
quested and ultimately received a hearing before an ALJ
during the spring of 1996. During these proceedings, Darius
not only presented the testimony of his mother detail-
ing his behavioral and language difficulties, but also ten-
dered the 1994 and 1995 evaluations of the University of
Chicago researchers. The diagnoses of Dr. Hermsmeyer
and Dr. Bishop-Townsend were also submitted to the ALJ.

On August 21, 1996, in a written opinion, the ALJ con-
cluded that Darius was not disabled within the meaning of
the Social Security Act. Citing only exhibit numbers corre-
sponding to Darius' tendered medical evidence, the ALJ
found that "[t]here is evidence which shows that the claim-

---

[3] (...continued)
Adaptive Behavior Scales yielded similar results, indicating
that Darius performed below his age level in communication,
socialization and daily living skills.

ant is hyperactive with language, speech and cognitive delays." Admin. R. at 16. In slightly more detail, the opinion quoted from the "Summary and Recommendation" portion of Drs. Lord's and Nofer's evaluation and noted that these psychologists "described the claimant's developmental delays as mild." Admin. R. at 16-17. Without any further discussion of the tests administered to Darius or of the resulting diagnoses, the ALJ concluded that, although Darius suffered from several impairments, these difficulties did not meet or equal any impairment in the SSA's listings. According to the ALJ, absent evidence that Darius' impairments were of comparable severity to a condition that would disable an adult, the SSA's regulations foreclosed this application for benefits. The SSA's Appeals Council declined Darius' request to review the ALJ's determination.

## 2.

During July 1999, Darius filed this action in the district court, seeking judicial review of the ALJ's determination pursuant to 42 U.S.C. § 405(g). Soon after, Darius filed for summary judgment; his counsel argued that the ALJ erred in finding that his impairments did not meet SSA Listings 112.05D and 112.05F for mental retardation. According to Darius, the ALJ's determination not only lacked the support of substantial evidence but also failed to articulate at some minimal level the bases for his findings. In a cross-motion for summary judgment, the Commissioner of the SSA ("the Commissioner") submitted that the evidence tendered to the ALJ simply failed to support a finding of mental retardation.

After considering the parties' positions, the district court entered summary judgment for the Commissioner. The dis-

trict court noted that, under Listings 112.05D and 112.05F, Darius had to demonstrate that he suffered from a marked impairment in intellectual functioning *as well as* some additional mental or physical impairment that imposed another significant limitation on his ability to function. Although commenting that the administrative "decision here is not in all respects a model of clarity," R.29 at 16, the district court concluded that substantial evidence ultimately supported the conclusion that Darius had failed to meet his burden. According to the district court, the ALJ had concluded that, although Darius suffered from moderate communicative and behavioral problems, he lacked similar limitations in other areas, including his cognitive, motor and social functioning. In the district court's estimation, these findings, even when coupled with Darius' scores on intelligence tests, precluded the claimant from satisfying the listing for mental retardation.

## II

## DISCUSSION

### A.

We must sustain the findings of the ALJ[4] so long as they are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Schoenfeld v. Apfel*, 237 F.3d 788, 792 (7th Cir. 2001). "[A] mere scintilla of proof will not suffice to uphold the [ALJ's] findings[; however,] the standard of substantial evidence requires no more than 'such relevant evidence

---

[4] We note that, because the SSA's Appeals Council denied Darius' request for review, the ALJ's findings constitute the final decision of the Commissioner in this case. *See Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994).

as a reasonable mind might accept as adequate to support a conclusion.'" *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In conducting our inquiry, we may consider the entire administrative record, but may not substitute our judgment for that of the ALJ by reconsidering the facts, reweighing the evidence or resolving factual disputes. *See Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999). Although great deference is accorded to the ALJ's determination, *see Diaz*, 55 F.3d at 305, "we must do more than merely rubber stamp the [ALJ's] decision[ ]." *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992).

## B.

### 1.

Before turning to the parties' contentions, we briefly set forth the legal framework governing Darius' application for SSI disability benefits. At the time of the ALJ's determination, a child was considered disabled within the meaning of Title XVI of the Social Security Act, and thus entitled to benefits, if he suffered from "any medically determinable physical or mental impairment of comparable severity" to an impairment that would disable an adult.[5]

---

[5] While Darius' administrative appeal was pending, Congress altered this test and created a new disability standard through the enactment of the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA"). *See* Pub. L. 104-193, 110 Stat. 2105 (1996) (codified at 42 U.S.C. § 1382c (2000)). Applicable to any claim not finally adjudicated as of August 22, 1996, this new standard states that a child is disabled if he "has a medically determinable physical or mental impairment, which results
(continued...)

42 U.S.C. § 1382c(a)(3)(A) (1994); 20 C.F.R. § 416.906 (1996). The Commissioner promulgated a four-step test to assist in this evaluation. *See* 20 C.F.R. § 416.924 (1996). In particular, under these SSA regulations, the child first had to demonstrate that he was not engaged in substantial gainful employment. *See id.* § 416.924(c). If he met his burden, the child proceeded to the second step and had to establish that he suffered from a "severe" impairment. *Id.* § 416.924(d). Once these criteria were established, a finding of disability would be made at the third step if the claimant demonstrated that his severe impairment not only

---

[5] (...continued)
in marked and severe functional limitations" over a statutorily prescribed time period. 42 U.S.C. § 1382c(a)(3)(C)(i) (2000). To assist in this analysis, the SSA has promulgated a three-step inquiry. *Compare* 20 C.F.R. §§ 416.924(c)-(f) (1996) *with* 20 C.F.R. §§ 416.924(b)-(d) (2001). The new standard and its accompanying regulations are more stringent than their pre-PRWORA counterparts, requiring a greater showing from an SSI disability claimant. *See Williams v. Apfel*, 179 F.3d 1066, 1068 n.3 (7th Cir. 1999).

In this case, the ALJ rendered his opinion regarding Darius' application on August 21, 1996, the day before the enactment of PRWORA. However, because Darius appealed this determination, his case was not finally adjudicated as of August 22, 1996, seemingly warranting application of the new standard to his claims. We, however, have noted that an individual denied benefits under the more lenient pre-PRWORA standard would also be denied benefits under the new standard and, accordingly, first have adjudicated cases as situated under the earlier standard. *See Williams*, 179 F.3d at 1068 n.3; *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997). Accordingly, we begin our inquiry under the pre-PRWORA standard—the test in effect when the ALJ rendered his decision in Darius' case. *Accord* 65 Fed. Reg. 57,747, 54,751 (Sept. 11, 2000).

met certain duration requirements but also "me[t] or medically equal[ed] a listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 416.924(e). However, if the claimant's impairment was severe, but did not meet or equal a listed impairment, the Commissioner engaged in a fourth and final inquiry, conducting an "individualized functional assessment to decide" whether the impairment was one of comparable severity to one that would disable an adult. *Id.* § 416.924(f). If answered in the affirmative, the SSA considered the child disabled.

### 2.

In this case, the parties' contentions center on the third stage of this four-part inquiry. At this step, the ALJ concluded that Darius' impairments failed to meet any of the SSA's listings. Although Darius mounts several challenges to this determination, a common theme binds these arguments: the ALJ failed not only to consider crucial pieces of evidence but also to articulate minimally the bases for his conclusions.

At this third stage, if the SSA concludes that an individual suffers from an impairment meeting a listing, the claimant is found disabled. *Id.* § 416.924(e). In this case, the parties focus on Listing 112.05—mental retardation in a child. According to the diagnostic definition of this provision, mental retardation is "characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.05. An individual possesses the required level of severity for this disorder if he meets one of the six subparts or criteria enumerated under the diagnostic definition. *Id.* Subparts D and F of Listing 112.05, the criteria upon which Darius relies, require a claimant to demon-

strate: (1) he has either "valid verbal, performance, or full scale IQ of 60 through 70", *id.* § 112.05D, or "marked impairment in age-appropriate cognitive/communicative function, documented by medical findings," *id.* § 112.05F (incorporating by reference § 112.02B2a); and (2) "a physical or other mental impairment imposing additional and significant limitation of function." *Id.* §§ 112.05D & F. In general terms, then, subparts D and F require a claimant to demonstrate that he has: (1) significant or marked subaverage intellectual or cognitive capabilities; *and* (2) some separate and distinct condition that places further significant limitations on him.

After reviewing the record, we must conclude that the ALJ failed to articulate adequately the bases for his conclusions. We have repeatedly admonished ALJs to "sufficiently articulate [their] assessment of the evidence to assure us that [they] considered the important evidence and . . . to enable us to trace the path of [their] reasoning." *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999). We require that an ALJ build an "accurate and logical bridge from the evidence to [his] conclusion" so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). In this case, the ALJ's determination falls short of that mark.

In particular, the ALJ did not discuss or even reference Listing 112.05—the section critical to Darius' case. Without any further reference to the listings, the opinion merely states that: "The claimant's impairments do not meet or equal in severity any Listed Impairment found in Appendix 1 to SubPart B of Regulation No. 4 of the Social Security Act, as amended." Admin. R. at 17. By failing to discuss the evidence in light of Listing 112.05's analytical framework, the ALJ has left this court with grave reservations

as to whether his factual assessment addressed adequately the criteria of the listing. *Cf. Burnett v. Comm'r*, 220 F.3d 112, 119 (3d Cir. 2000) (finding remand warranted when ALJ failed to discuss listing applicable to claimant); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (same). *See generally Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."). Although the Commissioner submits that the evidence of record demonstrates that Darius could not satisfy Listing 112.05's diagnostic definition of mental retardation,[6] we are hard pressed to find this precise conclusion either implicitly or explicitly in the ALJ's opinion. *See Steele*, 290 F.3d at 941; *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

The failure to discuss Listing 112.05 is further compounded by the ALJ's perfunctory consideration and anal-

---

[6]  We note that, at the time the ALJ rendered his opinion, the SSA regulations stated "Listing 112.05 (Mental Retardation) contains six sets of criteria, any one of which, if satisfied, will result in a finding that the child's impairment meets the listing." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.00A (1996). Thus, in 1996, the regulations did not require that a claimant meet the diagnostic definition of the listing *as well as* one of the six sets of criteria to establish disability. Indeed, this dual requirement first appears in the Code of Federal Regulations during 2001. *Compare* 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.00A (2001) ("If an impairment satisfies the diagnostic description of the introductory paragraph and any one of the six sets of criteria, we will find that the child's impairment meets the listing.") *with* 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.00A (2000) ("Listing 112.05 (Mental Retardation) contains six sets of criteria, any one of which, if satisfied, will result in a finding that the child's impairment meets the listing.").

ysis of the evidentiary record. In assessing whether Darius satisfied the listing, the ALJ had before him several significant pieces of evidence relating to this child. First, a medical report from Dr. Lauren Wakschlag, a psychologist from the University of Chicago, indicated that Darius suffered from Developmental Expressive and Receptive Language Disorder. A second group of psychologists from this university conducted an additional examination of Darius, not only administering standardized tests to, but also interacting with, the child. Based on their observations, and without disavowing the results of Dr. Lauren Wakschlag, the second University of Chicago group found that Darius operated "at the upper end of the mildly retarded range of intellectual functioning." Admin. R. at 113, Ex.18. In comparison, a third group of physicians simply concluded that the child suffered from hyperactivity. Rather than providing a meaningful discussion of these opinions and attempting to resolve the conflict, if any, among these different diagnoses, the ALJ merely cited the exhibit numbers and concluded that Darius "has impairments of hyperactivity with some language, speech and cognitive delays."[7] Admin. R. at 16-17.

Without meaningful analysis from the ALJ regarding this evidence, the parties have been left to dispute before this court the significance of the different diagnoses in light of Listing 112.05, and we are left with a record that does not permit us to engage in the meaningful, albeit deferential, review that the statute mandates. In short, proper resolution of this case requires that the ALJ consider Darius' proffered medical evidence and articulate spe-

---

[7]   Although the ALJ did quote from the opinion of Drs. Lord and Nofer, the inclusion of this material is insufficient to meet the minimum articulation requirement.

cific reasons for accepting or rejecting it. After doing so, he must discuss his factual findings in light of Listing 112.05. Absent these steps, we cannot accept the Commissioner's submission that Darius has failed to meet the SSA's listing for mental retardation in a child.

## Conclusion

We conclude that the ALJ failed to articulate adequately the bases for his conclusions, precluding this court from engaging in meaningful judicial review of Darius' claim. Accordingly, the judgment of the district court is reversed, and this case is remanded to the agency for further proceedings.

REVERSED and REMANDED

A true Copy:

      Teste:

               _____
               *Clerk of the United States Court of*
               *Appeals for the Seventh Circuit*