In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 06-2293

DAMIEN GILES, a Minor, by DENISE
GILES, his Mother and Natural Guardian,

*Plaintiff-Appellant*,

*v.*

MICHAEL J. ASTRUE,[Œ]

*Defendant-Appellee*.

---

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04 C 1102—**Thomas J. Curran**, *Judge.*

---

ARGUED JANUARY 23, 2007—DECIDED APRIL 16, 2007

---

Before FLAUM, KANNE, and WILLIAMS, *Circuit Judges*.

FLAUM, *Circuit Judge.* On September 1, 1995, Damien Giles began receiving Supplemental Security Income ("SSI") benefits for physical and cognitive deficiencies. In 1997, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act, which re-defined childhood disability. As a result, the Social Security

---

[Œ] Pursuant to Federal Rule of Appellate Procedure 43(c), we have substituted Michael J. Astrue for Jo Anne B. Barnhart as the named defendant-appellee.

Administration ("SSA") found Damien no longer disabled under the new definition, and thus ineligible to receive disability benefits. Damien's mother, Denise Giles, appealed and testified at a hearing before an Administrative Law Judge ("ALJ"). The ALJ found that Damien was no longer disabled, and Ms. Giles brought suit in federal district court pursuant to 42 U.S.C. § 405(g). The district court affirmed the ALJ and Ms. Giles appeals. For the following reasons, we reverse the decision of the district court and remand for further proceedings.

## I. BACKGROUND

Damien Giles was born in June 1994. Within his first year, Damien was diagnosed with developmental delays and underwent casting to correct the alignment of his feet. He had frequent ear infections and underwent surgery to receive ear tubes. These impairments qualified him for physical and speech therapy at Curative Rehabilitation Services ("CRS") in Milwaukee. In 1995, when Damien was a year old, his mother, Denise Giles, filed an application for SSI, alleging that Damien was disabled. The SSA granted the application and, beginning in September 1995, Damien began to receive SSI benefits.

On September 29, 1995, Damien underwent testing performed by Dr. Roland Manos, during which Damien displayed delayed mental development and significantly delayed psychomotor development. In January 1996, Damien began walking with a normal gait, although it was wide-based. In August 1996, he scored in the twenty-fifth percentile in gross motor skills and did not qualify for continued physical therapy at CRS. He did, however, continue to receive services at CRS for speech developmental delays. In December 1996, CRS staff noticed that Damien had "really opened up," was talking a lot, and was following classroom routines and simple directions. In

March 1997, a progress report indicated that Damien was making further progress in speech therapy, and shortly thereafter, CRS discharged him from its care. Though he was three years old, Damien functioned at the 18-19 month cognitive level.

After CRS discharged him, Damien began receiving special education services from the Milwaukee Public School system. In April 1997, Damien underwent a Multi-disciplinary Team (M-Team) evaluation to determine whether he needed further special care. The M-Team was comprised of teachers, educational specialists, and psychologists. Their evaluation revealed that Damien had continuing speech and language delays as well as a learning disability. As a result, the M-Team developed an Individualized Education Program ("IEP") for Damien. The IEP's "Speech/Language Report" stated that on the preschool language scale, Damien had expressive language skills at the 14-month level. The M-Team noted that Damien had a short attention span and became easily distracted. The evaluating psychologist observed that it was very difficult to maintain his attention and that Damien exhibited impulsive, wilful, and oppositional behavior.

On October 30, 1997, Damien underwent a consultative examination with Dr. Christopher Morano of the Milwaukee County Department of Public Health. During the examination, Damien focused his attention "very well" and put forth a good effort. He was responsive and cooperative, although his speech was poor. Dr. Morano opined that Damien had mild problems "across the board" with no severe deficits in any area. On October 31, 1997, Damien's pre-school teacher completed a school activities questionnaire in which she reported that Damien had a "very short" attention span and needed constant reminders to stay on task. She also noted Damien's difficulties

following routines and getting along with other children. She further mentioned that his speech was not clear or understandable.

In November 1997, SSA re-evaluated Damien's eligibility for benefits.[1] Two agency physicians reviewed Damien's record and determined that he no longer qualified for SSI. Ms. Giles appealed the SSA's decision to an ALJ.

While the appeal was pending, Damien's teachers continued to complete progress reports for him. In October 1998, his teacher reported that his attention span was improving, but that it was still not age-appropriate. He needed constant supervision and reminders to stay on task. His speech was still difficult to understand, although he was beginning to interact more with his peers. The following year, in October 1999, Damien's teacher observed his short attention span and noted that he engaged in overactive behavior and had difficulty with regular classroom routines.

A November 1999 psychological assessment revealed that Damien was cooperative and willing to be tested, but that he was distracted from tasks he found too difficult. The assessment also noted that Damien was very active; he had difficulty staying on task in the classroom setting and appeared to be "daydreaming." In October 2002, Damien's special education teacher completed a questionnaire and reported that Damien was reading, writing, and performing math at an early first-grade level and was able to follow up to three-step directions without difficulty. She also noted that he had a short attention span compared with his same aged peers.

---

[1] The Personal Responsibility and Work Opportunity Reconciliation Act directed SSA to redetermine the eligibility of children who qualified for benefits prior to the date of enactment. Pub. L. No. 104-193, 110 Stat. 2105, 2188 (1996).

On October 21, 2002, the ALJ assigned to Damien's appeal held a hearing during which both Damien and Ms. Giles testified. Damien testified that he could dress and groom himself. He stated that he did chores, homework, and enjoyed playing video games. Ms. Giles testified that Damien's mind tended to wander when he did his homework after school. She further stated that Damien had difficulty paying attention and "catching on" to things in school. She told the ALJ that Damien was not taking any medication for his attention or behavior difficulties. She also reported that Damien had not exhibited any behavioral problems in school within the last year. Ms. Giles also offered the various doctor and school reports discussed above.

On June 27, 2003, the ALJ concluded that Damien was not disabled. The ALJ found that:

1. The claimant is eight years of age and is not engaging in substantial gainful work activity

2. The medical evidence establishes that the claimant has severe speech/language disorder, learning disability, asthma and developmental delays, but does not have an impairment or combination of impairments that meets or medically or functionally equals the severity of any impairment on the Listing of Impairments.

3. Aside from being markedly limited in terms of the domain of acquiring and using information and the cognitive functioning area, the claimant is less than markedly limited in all other areas of functioning.

4. When the claimant's complaints and allegations about his limitations and impairments are considered in light of all of the objective medical evidence as well as the record as a whole, they reflect a

child who has improved and who does not have any impairment or combination of impairments in the Listing of Impairments.

5.  The claimant is not under a "disability" as defined in the Social Security Act and is not eligible for child's supplemental security income benefits under the provisions of section 1614(a)(3). The claimant's disability ceased in November 1997.

Following this decision, Ms. Giles filed a request for review to the SSA's appeals council, which denied the request, leaving the ALJ's decision as the final decision of the Commissioner. Ms. Giles then filed a complaint in federal court challenging the ruling. The district court affirmed, holding that the substantial evidence supported the ALJ's finding. Ms. Giles filed a timely appeal with this Court, asking us to review the ALJ's decision.

## II. ANALYSIS

Ms. Giles contends that the ALJ did not adequately articulate the basis for denying Damien benefits. This Court reviews the Commissioner's final decision to determine whether it is supported by substantial evidence. *Young v. Sec'y of Health and Human Servs.*, 957 F.2d 386, 388 (7th Cir. 1992). An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). However, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

**A. Disability Determination**

Under the Personal Responsibility and Work Opportunity Reconciliation Act, a child is disabled if he or she has a "physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The SSA employs a three-step analysis to decide whether a child meets this definition. 20 C.F.R. § 416.924(a). First, if the child is engaged in substantial gainful activity, his or her claim is denied. *Id.* Second, if the child does not have a medically severe impairment or combination of impairments, then his or her claim is denied. *Id.* Finally, the child's impairments must meet, or be functionally equivalent, to any of the Listings of Impairments contained in 20 CFR pt. 404, subpt. P, App. 1. *Id.*

To find an impairment functionally equivalent to one in the list, an ALJ must analyze its severity in six age-appropriate categories: 1) acquiring and using information, 2) attending and completing tasks, 3) interacting and relating with others, 4) moving about and manipulating objects, 5) caring for yourself, and 6) health and physical well-being. 20 C.F.R. § 416.926a(a). The ALJ must find an extreme limitation in one category or a "marked" limitation in two categories. A marked limitation is one which interferes seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(I). In this case the ALJ found that Damien was markedly limited in acquiring and using information, but was not markedly limited in any other domain.

Ms. Giles alleges that the ALJ's decision does not connect the evidence with the conclusion reached. We have not hesitated to remand an ALJ's decision that does not

sufficiently articulate the basis for the denial of benefits. *See Brindisi v. Barnhart*, 315 F.3d 783, 784 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). In *Brindisi*, the plaintiff applied for SSI benefits on behalf of her son, who had hearing impairments, speech delays, oppositional defiant disorder, attention deficit disorder, and separation anxiety. 315 F.3d at 784. An ALJ found that the plaintiff's son was not disabled. *Id.* at 786. In so finding, the ALJ merely stated, "[t]he claimant has a combination of severe impairments . . . . However, none of these impairments meet the requirements of an impairment listed in Appendix 1 to subpart P of regulation no. 400." *Id.* We held that "this conclusion [was] devoid of any analysis that would enable meaningful judicial review." *Id.* The Court noted that the analysis omitted any discussion of the boy's impairments in conjunction with the listings, and stated that "[s]uch a lack of reasoning prevents us from applying the decision structure undergirding disability determinations to a substantive analysis of [the boy's] impairments." *Id.*

In *Scott*, although the plaintiff's son had mild mental retardation, the SSA denied the plaintiff's application for SSI benefits. 297 F.3d at 592. The ALJ found that "there is evidence which shows that the claimant is hyperactive with language, speech, and cognitive delays." *Id.* Nevertheless, the ALJ concluded that "these difficulties did not meet or equal any impairments in the SSA's listings." *Id.* We remanded the case because the ALJ did not discuss or even reference the specific listing under which the plaintiff had applied for benefits. *Id.* at 595. The Court stated that "[b]y failing to discuss the evidence in light of [the specific listing's] analytical framework, the ALJ has left this Court with grave reservations as to whether his factual assessment addressed adequately the criteria of the listing." *Id.*

Just as in *Brindisi* and *Scott*, the ALJ in this case did not adequately "build an accurate and logical bridge from the evidence to [the] conclusion" so that, as a reviewing court, we may assess the validity of the agency's final decision and afford Ms. Giles meaningful review. *Scott*, 297 F.3d at 595. Although the ALJ found that Damien was markedly limited in acquiring and using information, the ALJ summarily concluded that "in all other domains and areas of functioning the claimant has some deficits, but is less than markedly limited." Such a conclusion standing alone does not sufficiently articulate the ALJ's assessment of the evidence as we have repeatedly required. *See, e.g.*, *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

This lack of specificity is particularly striking with regard to the domain of attending and completing tasks. Under this domain, the regulations provide that, "we consider how well you are able to focus and maintain your attention and how well you begin, carry through, and finish activities, including the pace at which you perform activities and the ease with which you change them." 20 C.F.R. § 416.926a. The ALJ noted that Damien has difficulty in maintaining attention and concentration in order to complete tasks, that his teachers reported numerous attention problems, and that he needed nearly constant supervision to finish classroom tasks; however, the ALJ did not explain why these findings were insufficient to find a marked limitation in attending and completing tasks. Indeed, it is unclear what evidence the ALJ relied upon in finding that Damien was not markedly limited in this domain. We require an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies. *See Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 1995). In the instant case, this has not occurred.

Moreover, Ms. Giles contends that the ALJ relied on an inappropriate medical finding to conclude that Damien

is not disabled. The ALJ noted that "the claimant has not been assessed as having attention deficit hyperactivity disorder or treated for attention deficit hyperactivity disorder ("ADHD")." The ALJ appears to have assumed that because Damien was not diagnosed with ADHD, his attention problems could not have been "marked." As Ms. Giles points out, however, the ALJ did not hear any medical evidence that attention problems exist only in children with ADHD.[2] Consequently, the ALJ's inference lacked evidentiary support. The Commissioner argues that the ALJ considered the totality of the evidence, which included the absence of any diagnosis of a specific attention deficit disorder. However, the absence of an ADHD diagnosis was the only evidence that the ALJ referred to in the discussion. Accordingly, we are left with the inference that the ALJ assumed that because Damien was not diagnosed with ADHD, he could not have had marked impairments in attending to his tasks.

### B.  Credibility Determination

A deficiency also exists in the evaluation of Ms. Giles' testimony. In evaluating the credibility of statements supporting a Social Security application, this Court has said that an ALJ must comply with the requirements of Social Security Ruling 96-7p. *Steele*, 290 F.3d at 942. SSR 96-7p requires an ALJ to articulate the reasons behind credibility evaluations.

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make

---

[2] Indeed, there are many causes of attention and impulsivity problems, such as learning disabilities, sensory deficits, neurological problems, organization, and stress.

a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7P, 1996 WL 374186, at *4 (S.S.A. July 2, 1996). Here, the ALJ did not make a credibility assessment as to Ms. Giles' testimony, though the ALJ did recite some parts of the testimony. If Ms. Giles' testimony was not credible, the ALJ was obligated to explain the basis of that assessment. If, on the other hand, Ms. Giles' testimony was credible, the ALJ was required to explain why the testimony did not support a finding that Damien was markedly limited in attending and completing tasks.

### III. CONCLUSION

For the above reasons, we REVERSE the decision of the district court and REMAND for further proceedings consistent with this opinion.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
