In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2422

VICKI MURPHY, on behalf of
NATHAN MURPHY, a minor,

*Plaintiff-Appellant,*

*v.*

MICHAEL J. ASTRUE, Commissioner of Social Security,[1]

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05-C-3044—**Charles P. Kocoras**, *Judge.*

ARGUED JANUARY 24, 2007—DECIDED JULY 13, 2007

Before RIPPLE, ROVNER, WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Nathan Murphy, a minor, applied for Supplemental Security Income after being diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). Although the Administrative Law Judge (ALJ) found that Nathan exhibited marked difficulty in one domain of functioning, the ALJ denied benefits because impairment in two domains is required to qualify for

[1] Pursuant to Fed. R. App. P. 43(c), Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of Social Security.

coverage. In reaching his decision, the ALJ relied in part on documents he obtained from Nathan's school after the administrative hearing. A psychologist selected by the ALJ testified at the hearing and specifically said he would need the school documents to come to a conclusion regarding Nathan's disability, yet the ALJ did not contact the psychologist after receiving those documents. The ALJ also discounted, without explanation, information in the school documents that supports a conclusion that Nathan is disabled. As a result, the ALJ's decision was not supported by substantial evidence, and so we remand for further proceedings.

## I. BACKGROUND

Nathan was eleven years old and in the fifth grade at the time of his March 2004 hearing before the ALJ. Doctors had diagnosed him with ADHD in 2000 and with bipolar disorder in 2002. Before the hearing the ALJ reviewed Nathan's medical record, which included assessments of his condition and behavior from doctors and social workers. Nathan testified at the hearing, as did his mother and stepfather. Dr. Kenneth Kessler, a clinical psychologist who had reviewed Nathan's medical record, also appeared at the request of the ALJ and provided expert testimony.

Nathan, his mother, and his stepfather testified about Nathan's day-to-day moods and behavior, focusing primarily on his inattentiveness and violent outbursts. Dr. Kessler confirmed that Nathan exhibited a marked limitation in the domain of "interacting and relating to others," and the psychologist also said Nathan did not have similar limitations in another four of the six relevant domains. The ALJ accepted these conclusions. Dr. Kessler, however, was unable to reach a conclusion concerning the final domain of "attending and completing tasks." He testified

that the evidence suggested that Nathan did have a marked limitation in this domain before he started receiving treatment in 2000, but the available information was inadequate to determine whether Nathan still suffered from that limitation. He indicated that recent behavioral evaluations from Nathan's school would likely clarify the question. The hearing concluded with Mrs. Murphy agreeing that the ALJ would ask the school to complete and forward a behavioral assessment. The ALJ also told Mrs. Murphy and Nathan's counsel that he hoped that after receiving this assessment he "[could] make a decision based on that."

Later the ALJ supplemented the administrative record with what appears to be the behavioral assessment (the document is dated just a few days after the hearing) as well as additional documents from Nathan's school: a Vanderbilt Teacher Behavior Evaluation Scale completed just before the hearing, Individualized Education Program progress reports from 2003 to 2004, and scores from academic achievement tests taken by Nathan between 2000 and 2003. Except for the test scores, these records mainly included surveys by Nathan's teachers documenting his behavioral tendencies and classroom performance. After reviewing these documents, without the benefit of Dr. Kessler's expert opinion on the additional information, the ALJ ruled that Nathan did not have a marked impairment in the domain of "attending and completing tasks." That finding alone made Nathan ineligible for benefits, but the ALJ went further and concluded that Nathan's mother and stepfather were not fully credible because "their complaints were not entirely consistent with the other substantial evidence of record." The ALJ also noted evidence that Mrs. Murphy chose to pursue Supplemental Security Income only after she failed to secure child support from Nathan's biological father.

The Appeals Council declined to review the ALJ's decision, making that ruling the final decision of the Commissioner. Mrs. Murphy sought judicial review on Nathan's behalf, and when the district court upheld the denial of benefits, she appealed.

## II. ANALYSIS

### A. *The Legal Framework*

Where, as here, the Appeals Council denies a claimant's request for review, the ALJ's ruling becomes the final decision of the Commissioner. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). We will uphold that decision if it is supported by substantial evidence, meaning evidence a reasonable person would accept as adequate to support the decision. *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Skarbek*, 390 F.3d at 503.

A child is disabled within the meaning of the Social Security Act if he has a "physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Whether a child meets this definition is determined via a multi-step inquiry. 20 C.F.R. § 416.924(a); *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 486-87 (7th Cir. 2007). First, if the child is engaged in substantial gainful activity, his claim will be denied. *Giles ex rel. Giles*, 483 F.3d at 486. Second, if he does not have a medically severe impairment or combination of impairments, his claim will be denied. *Id.* Third, the child's claim will be denied unless his impairment meets, or is medically or functionally equivalent to, one of the listings of impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* at 486-87; 20 C.F.R. § 416.902.

To determine whether an impairment is the functional equivalent of a listing, an ALJ evaluates its severity in six domains: 1) acquiring and using information, 2) attending and completing tasks, 3) interacting and relating with others, 4) moving about and manipulating objects, 5) caring for oneself, and 6) health and physical well-being. 20 C.F.R. § 416.926a(a), (b)(1). Functional equivalence exists, and a child qualifies for benefits, if the ALJ finds a marked difficulty in two domains of functioning or an extreme limitation in one. *Id.* § 416.926a(a). The ALJ here concluded that Nathan had marked difficulty in a single domain, and therefore did not qualify for Supplemental Security Income.

## B.  The ALJ Was Qualified to Interpret the School Records Without Expert Assistance

Mrs. Murphy first argues that the ALJ erred in evaluating medical evidence without consulting an expert. Specifically, she contends that documents obtained from Nathan's school after the administrative hearing contained medical information that the ALJ should not have interpreted without Dr. Kessler's assistance. She insists that those documents, if subject to expert analysis, could prove a marked difficulty in the "attending and completing tasks" domain, and that by interpreting the documents without expert assistance, the ALJ failed to adequately develop the record and support his ruling.

We have recognized that an ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). And we have explained that an ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion. *See Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004); *Golembiewski*

*v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Rohan*, 98 F.3d at 970-71; *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995). However, here we reject Mrs. Murphy's argument that the school documents received by the ALJ are "medical" records that triggered an obligation of the ALJ to contact Dr. Kessler. The Social Security Administration distinguishes medical evidence (that derived from clinical and laboratory diagnostic techniques used to indicate physiological, psychological, or anatomical abnormalities) from general observations of daily behavior and restrictions that might result from a medical condition. *See* 20 C.F.R. §§ 416.912(b), 416.928(b)-(c). Sources of medical evidence include psychologists or, in some limited instances, "licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting . . . ." 20 C.F.R. § 416.913(a). Given these limitations on the scope and source of medical evidence as defined by the agency, we do not agree that a teacher's description of a child's daily behavior qualifies as medical evidence. In fact, § 416.913 specifically distinguishes educational personnel from medical sources. *See Branum v. Barnhart*, 385 F.3d 1268, 1272 (10th Cir. 2004) (holding that records from behavioral health center were not compiled by physician and thus were not medical evidence). The documents received from Nathan's school after the administrative hearing were lay descriptions of readily observable, everyday behaviors. Under the regulations, such descriptions are not medical evidence, and Mrs. Murphy has provided no basis for finding otherwise. So, we conclude that the ALJ was qualified to review those documents without assistance.

## C.   *The ALJ Failed to Explain His Disregard of Pertinent Evidence*

We find Mrs. Murphy's argument that the ALJ ignored substantial evidence in support of a finding of disability

more persuasive. An ALJ has a duty to fully develop the record before drawing any conclusions, 20 C.F.R. § 416.912(d); *Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004); *Branum*, 385 F.3d at 1271, and must adequately articulate his analysis so that we can follow his reasoning, *Giles ex rel. Giles*, 483 F.3d at 487; *Prochaska*, 454 F.3d at 735; *Skarbek*, 390 F.3d at 503. In this case the ALJ did not explain why he gave no weight to the portions of the school documents which support a finding that Nathan is disabled. The records indicate that Nathan was having difficulty completing his work because of deficits in attention span, concentration, and on-task behavior. He was losing things, working very slowly, struggling to finish assignments, and turning in incomplete work. Often he failed to pay attention to details and avoided or struggled with tasks requiring sustained mental effort. The ALJ did little to counter this evidence. He noted only that the school documents reflected that Nathan did not talk excessively, did not interrupt or intrude, did not move about unexpectedly, knew the answers to questions when called upon, was cooperative, had a good sense of humor, tried to follow rules, and wanted to do well in his studies. These traits may well be accolades for Nathan, but the ALJ did not explain how or why they trump the evidence of his inability to attend and complete tasks. *See Giles ex rel. Giles*, 483 F.3d at 488; *Ribaudo v. Barnhart*, 458 F.3d 580, 583-84 (7th Cir. 2006).

Dr. Kessler testified that at one time Nathan had a marked difficulty attending and completing tasks. The ALJ should have supplied Dr. Kessler with the school records and allowed him to give a medical opinion as to whether this deficit persists. Instead, Dr. Kessler was not able to address the inconsistencies in the record and to form an opinion on the dispositive question in the case. Contacting Dr. Kessler a second time would have been the best

way for the ALJ to complete the administrative record and adequately support his decision, even if agency regulations did not compel him to do so. However, the ALJ skipped this last significant step and failed to sufficiently explain his disregard of evidence suggesting disability. As a result, a reasonable person could not accept his reasoning as adequate to support the decision. *Giles ex rel. Giles*, 483 F.3d at 487-88; *Prochaska*, 454 F.3d at 734-35.

This conclusion is distinguishable from our decision in *Flener*, in which the claimant argued that the ALJ failed to develop the record and did not adequately support his conclusion because he did not contact an expert to statistically compare the results of the claimant's behavioral studies to the general population. 361 F.3d at 448-49. There, we determined that the ALJ did not need to conduct additional investigation into the results of the studies because he relied on the medical conclusions of experts who reviewed the behavioral studies and determined that the claimant was not disabled. Here, in contrast, the medical expert had insufficient evidence to reach a conclusion regarding disability, and the ALJ disregarded evidence of Nathan's disability without identifying any support for his conclusion.

### D.  The ALJ's Credibility Determinations Were Not Supported by the Record

Mrs. Murphy also argues that the ALJ erred in not fully crediting her testimony and the testimony of Nathan's stepfather. Generally, the ALJ is in the best position to determine credibility, *Barnett*, 381 F.3d at 670; *Prochaska*, 454 F.3d at 738, and if an ALJ gives specific reasons that are supported by the record, his or her determination will stand, *Barnett*, 381 F.3d at 668; *Golembiewski*, 322 F.3d at 915. In this case, however, the ALJ's credibility finding is intertwined with the same gaps

in the record and reasoning that require us to vacate his determination of Nathan's disability. The ALJ noted, without elaboration, that the family's observations of Nathan's aggression and inattentiveness did not align with more positive observations by school officials. But it was these school observations, sometimes supporting a finding of disability, that the ALJ disregarded without explanation and that must be further examined upon remand. The testimony of Nathan's mother and stepfather must also be reexamined in light of a proper treatment of the school's observations, to see if there truly are any contradictions. Without an adequate examination of the school documents, a finding that the parents' testimony contradicts those documents is not supported by the record.

### E. We Need Not Resolve Whether HALLEX Required an Expert Opinion on Nathan's School Records

Finally, Mrs. Murphy contends that § I-2-7-30 of the *Hearings, Appeals and Litigation Law Manual* (*HALLEX*), promulgated by the Social Security Administration Office of Disability Adjudication and Review, required the ALJ to re-contact Dr. Kessler in this circumstance. The Commissioner argues that Mrs. Murphy waived this argument, but our disposition in this case makes it unnecessary to resolve this issue.

### III. CONCLUSION

The decision of the district court is VACATED, and the case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*