**Steven A. SAMUEL, Plaintiff,**

**v.**

**Jo Anne BARNHART, Commissioner of the Social Security Administration, Defendant.**

No. 02–C–0569.

United States District Court, E.D. Wisconsin.

April 29, 2004.

Frederick J. Daley, Jr., Chicago, IL, for Plaintiff.

Nora S. Barry, Milwaukee, WI, for Defendant.

### DECISION AND ORDER ON MOTION FOR AWARD OF ATTORNEY'S FEES

ADELMAN, District Judge.

Plaintiff Steven Samuel brought this action pursuant to 42 U.S.C. § 405(g) challenging the decision of defendant Jo Anne Barnhart, Commissioner of the Social Security Administration, denying his application for disability benefits under the Social Security Act. I reversed the Commissioner's decision, *Samuel v. Barnhart*, 295 F.Supp.2d 926 (E.D.Wis.2003), and plaintiff now moves for an award of attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

### I. EAJA STANDARD

The EAJA mandates an award of attorney's fees to a "prevailing party" in a civil action against the United States where the government's position was not "substantially justified," no "special circumstances" make an award unjust, and the fee application is submitted to the court within 30 days of final judgment. 28 U.S.C. § 2412(d)(1); *United States v. Hallmark Const. Co.*, 200 F.3d 1076, 1078–79 (7th Cir.2000). Because I reversed and remanded the Commissioner's decision under sentence four of § 405(g), plaintiff was the "prevailing party" in this litigation. *See Shalala v. Schaefer*, 509 U.S. 292, 302, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993); *Raines v. Shalala*, 44 F.3d 1355, 1362 (7th Cir.1995). The application was timely filed, and the Commissioner points to no special circumstances making an award unjust. However, the Commissioner argues that the motion should be denied because her position was "substantially justified." She also contends that the amount of the request is excessive and

that any award should be reduced accordingly.

## II. SUBSTANTIAL JUSTIFICATION

### A. Standard

■ While the fact that the Commissioner lost in court creates no presumption in favor of awarding fees, *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir.1994), the Commissioner must demonstrate that the government's position was "substantially justified" in order to avoid a fee award. *Cummings v. Sullivan*, 950 F.2d 492, 495 (7th Cir.1991). This requires the Commissioner to show that her position had a reasonable basis both in law and fact. *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The position must be " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Id.* at 565, 108 S.Ct. 2541. The position need not be " 'justified to a high degree,' " *id.* at 565, 108 S.Ct. 2541, but it must be "more than merely undeserving of sanctions for frivolousness," *id.* at 566, 108 S.Ct. 2541.

■ Although the court makes only one determination on this issue, it must consider both the government's posture during the litigation before the court and the prelitigation decision or action on which the lawsuit was based. *See Cummings*, 950 F.2d at 496–97; *see also Commissioner, INS v. Jean*, 496 U.S. 154, 159, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).

Thus, fees may be awarded in cases where the government's prelitigation conduct was not substantially justified even though its litigating position may have been substantially justified and vice versa. In other words, the fact that the government's litigating position was substantially justified does not necessarily offset prelitigation conduct that was without a reasonable basis.

*Marcus*, 17 F.3d at 1036.

### B. Analysis

In the present case, I reversed and remanded the ALJ's decision for four reasons. First, the ALJ's RFC determination was flawed because the ALJ (a) provided no medical support for his finding, (b) failed to consider the report of one treating source, and (c) improperly evaluated the opinions of two other examining/treating physicians. Second, the ALJ erred in finding that plaintiff did not suffer from a severe mental impairment. Third, the ALJ's evaluation of plaintiff's credibility was flawed. And fourth, the ALJ's hypothetical question to the vocational expert (VE) failed to include all of plaintiff's impairments. I address each under the substantial justification standard.

#### 1. RFC

■ The ALJ's RFC determination was flawed in three respects.

##### a. Failure to Cite Medical Evidence

First, the ALJ failed to cite any medical evidence supporting his finding that plaintiff was capable of performing the exertional requirements of light work. *Samuel*, 295 F.Supp.2d at 944. One such requirement is the ability to stand/walk for a total of about six hours out of an eight hour work day. SSR 83–10; 20 C.F.R. § 404.1567(b). In considering the various medical opinions in this case, the ALJ decided to give substantial weight to the report of Dr. Ward Jankus, a consulting physician for the Administration. (Tr. at 28.) However, Dr. Jankus stated that plaintiff's "weight bearing capacity is limited in the range of 2–3 hours out of an 8 hour period with breaks once or twice per hour to be able to sit down." (Tr. at 320.)

This is insufficient to meet the requirement of light work. *Samuel,* 295 F.Supp.2d at 944. The ALJ failed to cite any other medical evidence supporting this finding, and, aside from the opinions of two consulting, non-examining physicians (Tr. at 310, 324), which the ALJ specifically rejected (Tr. at 28), there was none. Plaintiff's doctors concluded that he could stand/walk less than two hours out of an eight hour day. (Tr. at 372, 392.) By failing to include in his narrative discussion a description of how the medical evidence supported his finding, the ALJ committed a clear error of law. *See* SSR 96–8p ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) . . . ."); *see also Koschnitzke v. Barnhart,* 293 F.Supp.2d 943, 952 (E.D.Wis.2003) (finding that ALJ committed error of law by failing to comply with SSR).

The Commissioner responds that in determining RFC the ALJ need not rely on the opinion of a doctor. (Def.'s EAJA Resp. at 4.) She cites *Diaz v. Chater,* 55 F.3d 300, 306 n. 2 (7th Cir.1995), where the court stated:

> Mr. Diaz claims that the ALJ erred in making the "medical judgment" of his RFC. According to Mr. Diaz, the ALJ should have relied solely on the opinions of physicians. The determination of RFC, however, is an issue reserved to the SSA. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a). That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict. *Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir.1985).

The Commissioner mis-reads my decision. I did not hold that the ALJ erred because he failed to adopt and *solely* rely on a medical report in determining RFC. "The RFC assessment must be based on *all* of the relevant evidence in the case record[.]" SSR 96–8p. But this does not mean that the ALJ can make an RFC finding without citing *any* medical evidence. As SSR 96–8p plainly states:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . .
>
> In all cases in which symptoms, such as pain, are alleged, the RFC assessment must:
>
> ● Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate;
>
> ● Include a resolution of any inconsistencies in the evidence as a whole; and
>
> ● Set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.
>
> . . . . .
>
> *Medical opinions.* The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

The ALJ clearly ran afoul of this Ruling in the present case. He did not "consider and address medical source opinions" and failed to reconcile the conflict between his finding and Dr. Jankus's report. Thus, the ALJ committed an error of law, *see Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir.1991), and so understood, the Commissioner's position can find no support in *Diaz*.

The Commissioner also contends that the ALJ "weighed the opinions of record and reasonably formulated his RFC in light of the record evidence." (Def.'s EAJA Resp. at 4.) While it is the job of the ALJ and not the court to weigh the evidence and formulate the claimant's RFC, the court must reverse where the ALJ's RFC determination conflicts with the medical evidence credited by the ALJ. *See Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir.2004) (reversing where ALJ's RFC determination failed to take into account limitations contained in medical reports ALJ credited). In such a situation, the ALJ has "failed to build the 'accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review.'" *Id.* at 1003 (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir.2002)). In the present case, the ALJ credited the report of Dr. Jankus, then adopted an RFC determination that ignored Jankus's conclusion as to plaintiff's weigh bearing ability. Therefore, the Commissioner's claim that the ALJ "reasonably formulated his RFC finding" lacks merit.

The Commissioner's position on this issue was not substantially justified. It was unreasonable for the ALJ to disregard SSR 96–8p, *see Cornella v. Schweiker*, 728 F.2d 978, 985 (8th Cir.1984) ("It was not reasonable for the Secretary to ignore her own regulations."); and it was unreasonable for the ALJ to adopt an RFC determination contrary to the medical report he credited, *see Wates v. Barnhart*, 288 F.Supp.2d 947, 952 (E.D.Wis.2003) (finding Commissioner's position not substantially justified where ALJ made RFC determination that ignored aspects of medical report she credited).

### b. Dr. Yoder's Report

Second, the ALJ ignored the September 10, 1998 report of Dr. Yoder, one of plaintiff's treating physicians. *Samuel*, 295 F.Supp.2d at 945–46. In that report, Dr. Yoder opined that plaintiff had permanent partial disability of 12% to the right shoulder based on lack of stamina, endurance, pain and clicking, and restricted motion. (Tr. at 419.) Not only did the ALJ fail to discuss this report in his decision, he also failed to incorporate any restrictions on plaintiff's ability to perform overhead work into his RFC determination. *Samuel*, 295 F.Supp.2d at 946–47.

The Commissioner acknowledges the oversight, but argues that the ALJ is not required to address every piece of evidence, the ALJ did discuss Yoder's treatment notes, and the ALJ reasonably accommodated this evidence by restricting plaintiff to a range of light work that involved no more than occasional handling or fine manipulation with his left arm. (Def.'s EAJA Resp. at 4 n. 1.) This is basically the same argument I rejected when ruling on the merits:

> While it is true that "an ALJ need not provide a complete written evaluation of every piece of testimony and evidence," *Diaz*, 55 F.3d at 308, an ALJ may not completely ignore the report of a treating source, *Henderson v. Barnhart*, 205 F.Supp.2d 999, 1013 (E.D.Wis.2002). When an ALJ fails to discuss such an important piece of evidence he not only fails to "give good reasons" for his decision as required by the regulations, 20

C.F.R. § 404.1527(d)(2), he makes it impossible for the reviewing court to tell whether the evidence was rejected or simply overlooked. *Zblewski v. Schweiker*, 732 F.2d 75, 78–79 (7th Cir. 1984); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir.2003) (stating that while the ALJ need not discuss every piece of evidence in the record, he may not ignore evidence that is contrary to his ruling; otherwise it is impossible for a reviewing court to tell whether the ALJ's decision rests upon substantial evidence); *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir.2003) (stating that where important evidence is unmentioned by ALJ, court is left to wonder whether it was even considered); *Zurawski*, 245 F.3d at 888 (stating that it is incumbent upon an ALJ to discuss evidence contrary to the Commissioner's position); *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir.2000) ("While the ALJ need not articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position."). And, while the court need not remand in search of a perfectly drafted opinion, where the ALJ's decision leaves the reviewing court with reservations as to whether an issue was fully addressed, the court should reverse. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

In the present case, while the ALJ did discuss some of the treatment Dr. Yoder provided, he did not discuss or accommodate the limitations contained in Dr. Yoder's September 1998 report. The ALJ's RFC determination does not restrict plaintiff from overhead work or other tasks that could impact plaintiff's shoulder condition. Thus, while the ALJ did restrict plaintiff from a full range of light work, he did not impose restrictions consistent with Dr. Yoder's opinion or explain why that opinion lacked credi-

bility. This omission is all the more striking due to the fact that Dr. Jankus also restricted plaintiff from performing overheard work. The ALJ credited Dr. Jankus's report except for the limitation on overhead work, but he provided no explanation for his rejection of this aspect of Jankus's opinion. (Tr. at 28.) Thus, the matter must be remanded for consideration of Dr. Yoder's September 1998 report.

*Samuel*, 295 F.Supp.2d at 946–47 (footnotes omitted). For the same reasons, the Commissioner's argument is no more convincing now than it was on the merits, even under the less demanding EAJA standard.

Moreover, the Commissioner's present contention that the ALJ accommodated this evidence by restricting plaintiff to work involving no more than occasional handling or fine manipulation with his *left* arm, is perplexing given that Yoder performed surgery on plaintiff's *right* shoulder. In sum, the Commissioner's contention that it was reasonable for the ALJ to ignore this evidence lacks merit. *See Henderson v. Barnhart*, 257 F.Supp.2d 1163, 1168 (E.D.Wis.2002) (awarding fees where ALJ failed to consider report of treating physician).

#### c. ALJ's Analysis of Medical Evidence

Finally, the ALJ improperly evaluated the opinions of treating/examining physicians Drs. Rosler and Heydarpour.

#### i. Dr. Rosler

The ALJ rejected Dr. Rosler's opinion in part because he only examined plaintiff twice. (Tr. at 29.) However, the fact that Dr. Rosler may not have qualified as a "treating source," 20 C.F.R. § 404.1502, did not authorize the ALJ to give his opinion short shrift. Dr. Rosler was still an

"examining source." *Samuel,* 295 F.Supp.2d at 948 (citing 20 C.F.R. 404.1527(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."); *Moore v. Barnhart,* 278 F.3d 920, 924 (9th Cir.2002) (stating that ALJ can only reject an examining physician's opinion for reasons supported by substantial evidence in the record)).

The other two reasons the ALJ supplied for rejecting Dr. Rosler's opinion did not withstand scrutiny. First, the ALJ stated that Rosler had not performed a functional capacity evaluation. However, the ALJ cited no authority for the proposition that such an evaluation must be performed in order for the physician's opinion to be afforded any weight. Indeed, the ALJ afforded substantial weight to the opinion of Dr. Jankus, despite that fact that Jankus also did not perform a functional capacity evaluation. *Samuel,* 295 F.Supp.2d at 948. Second, the ALJ stated that there was no objective evidence supporting Dr. Rosler's restrictions. However, as noted in my decision, there was abundant objective evidence of impairments of the spine, shoulder, elbow and knee likely to cause severe pain. *Id.*

■ The Commissioner argues that because the ALJ acknowledged some of Dr. Rosler's concerns in formulating plaintiff's RFC she had a rational ground for arguing that the ALJ's decision was adequate. (Def.'s EAJA Resp. at 5.) However, the court must examine not only the government's position before the court but also the agency decision on which the lawsuit was based. *Marcus,* 17 F.3d at 1036. In the present case, the ALJ's treatment of Dr. Rosler's opinion was unreasonable. First, the ALJ applied a double standard to the opinions of Drs. Rosler and Jankus. While it is the ALJ's job to decide which report is more credible, he must render that decision pursuant to evenly applied criteria. Second, the ALJ overlooked significant, objective medical evidence.

## ii. Dr. Heydarpour

■ The ALJ rejected Dr. Heydarpour's opinion primarily because it was "not supported by, or consistent with, the objective medical evidence." (Tr. at 29.) That is not the correct standard. Pursuant to SSR 96–8p, the ALJ must give controlling weight to the treating source's opinion if it is "not inconsistent" with other substantial evidence in the record; the opinion need not, as the ALJ stated, be "consistent" with the record. *Dominguese v. Massanari,* 172 F.Supp.2d 1087, 1100 (E.D.Wis.2001). Further, as noted, there was objective evidence to support plaintiff's complaints of pain, and Dr. Heyparpour's opinion was not based solely on plaintiff's subjective complaints—he made observations of plaintiff that supported his opinion. *Samuel,* 295 F.Supp.2d at 950. The ALJ also failed to consider the factors set forth in § 404.1527(d)(2) in evaluating this opinion. *Id.* at 949. Finally, none of the specific reasons the ALJ provided for rejecting the opinion withstood scrutiny. *Id.* at 949–50.

The Commissioner argues that it was reasonable for the ALJ not to credit Dr. Heydarpour's report due to the lack of objective support. However, aside from the fact that there was objective evidence, the Commissioner ignores the ALJ's application of an erroneous legal standard. This was unreasonable. *See Gutierrez v. Barnhart,* 274 F.3d 1255, 1259 (9th Cir. 2001) ("Finding that an agency's position was substantially justified when the agency's position was based on violations of . . . the agency's own regulations, constitutes an abuse of discretion.") (internal quote marks omitted); *Dominguese v. Barnhart,* No. 99–C–596, 2002 WL 32318281, at *3–4,

2002 U.S. Dist. LEXIS 14600, at *9–10 (E.D.Wis. July 12, 2002) (awarding fees where, *inter alia*, ALJ applied incorrect standard to treating source opinion and improperly claimed that the opinion was not supported by hard evidence).

### 2. Mental Impairment

■ The ALJ's second error was in finding that plaintiff's mental impairment was not severe. *Samuel*, 295 F.Supp.2d at 950–51. The ALJ gave several reasons for his finding. First, he noted that plaintiff stated in his daily activities questionnaire that going to a comedy club was better medicine than the drugs prescribed by his doctors, but he never explained how this meant plaintiff's depression was not severe. *Id.* at 952.

■ Second, he relied upon the report of a non-examining, state agency consultant, who found that plaintiff did not have a severe impairment. However, the Seventh Circuit has made clear that an "ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir.2003) (citing *Moore v. Barnhart*, 278 F.3d 920, 924 (9th Cir.2002)); *see also Whitney v. Schweiker*, 695 F.2d 784, 788–89 (7th Cir. 1982). The reports of the examining physicians revealed that plaintiff had a severe impairment. *Samuel*, 295 F.Supp.2d at 952.

Third, the ALJ stated that plaintiff had not received regular therapy or other treatment. But courts have repeatedly condemned ALJs for rejecting claims of mental 'disability based on a lack of or infrequent treatment. *See, e.g., Wilder v. Chater*, 64 F.3d 335, 336–37 (7th Cir.1995); *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989). In any event, the ALJ ignored evidence that plaintiff sought

therapy from two different sources and was on several occasions prescribed medications for mental illness. *Samuel*, 295 F.Supp.2d at 953.

Fourth, the ALJ found that plaintiff did not have any restrictions in activities of daily living based on plaintiff's statements that he infrequently did household cleaning, laundry, and cooking, and could perform "a little" yardwork. (Tr. at 24–25.) However, the ALJ never explained how these minimal activities supported his conclusion. *Samuel*, 295 F.Supp.2d at 953 (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir.2000) (stating that minimal daily activities do not establish that a person is capable of engaging in substantial physical activity)).

Finally, despite acknowledging Dr. Yanchar's observation that plaintiff had a diminished ability to concentrate, the ALJ found that plaintiff "seldom" had difficulties in concentration, persistence and pace. (Tr. at 25.) The ALJ cited no medical or other evidence in support of this finding. *Samuel*, 295 F.Supp.2d at 953. Finding none of these reasons convincing, I reversed and remanded the matter. *Id.* at 953–54.

The Commissioner argues that even though the ALJ found the mental impairment non-severe at step two he continued with the sequential evaluation and considered plaintiff's impairments in combination. (Def.'s EAJA Resp. at 5.) I rejected this same argument at the merits stage:

[T]he ALJ based his RFC assessment only on plaintiff's "cervical and lumbar difficulties." (Tr. at 30.) Thus, even if the ALJ properly found that this impairment was not severe at step two, he erred in not considering any effects of plaintiff's depression in determining RFC. *See* SSR 96–8p (discussing requirements for mental RFC determination, and stating that the mental RFC

assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment than step two severity rating).

*Samuel*, 295 F.Supp.2d at 953–54. Although I apply a different standard now in assessing a fee petition than in determining the merits, the Commissioner's argument for the same reasons still lacks merit. Under SSR 96–8p, the ALJ was supposed to consider all impairments, severe and non-severe, in combination in setting RFC, but it is clear from the decision that he considered only physical impairments in the present case.

The Commissioner also argues that the records of plaintiff's treating physicians did not show that plaintiff had a severe mental impairment; a mere diagnosis of depression does not indicate the severity. (Def.'s EAJA Resp. at 6 n. 2, citing *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988).) She also contends that no doctor suggested any significant work-related limitations due to a mental impairment. (Def.'s EAJA Resp. at 6.) However, the treatment records *did* contain an evaluation of severity and *did* suggest work-related limitations. Dr. Nagy estimated a Global Assessment of Functioning (GAF) of 55–60, which meant that plaintiff's symptoms were "moderate," i.e. that he would have moderate difficulty in social, occupational or school functioning. *Samuel*, 295 F.Supp.2d at 952 (citing *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition* 34 (2000)). Dr. Nagy's assessment was corroborated by therapist Michael Wallace, who treated plaintiff for depression and estimated a GAF of 51. Dr. Yanchar examined plaintiff and found that plaintiff had "diminished ability to concentrate." (Tr. at 376.) Thus, the Commissioner's argument is contrary to the record.

For all of these reasons, the Commissioner has failed to prove that her position on this issue was substantially justified. *See, e.g., Rohan v. Barnhart*, 306 F.Supp.2d 756, 768 (N.D.Ill.2004) (awarding benefits and fees where ALJ improperly relied on plaintiff's failure to seek treatment and on activities that did not support ALJ's findings); *Wates*, 288 F.Supp.2d at 951 (awarding fees where Commissioner argued that ALJ could adopt opinion of non-examining, consulting physicians over treating physicians).

### 3. Credibility Determination

■ Third, the ALJ erred in evaluating the credibility of plaintiff's testimony. *Samuel*, 295 F.Supp.2d at 954–57. As indicated in my decision, an ALJ's credibility determination should ordinarily be afforded great deference. However, in the present case, the ALJ relied on "objective" factors that did not support his determination, on selective statements of the evidence, and on the fact that plaintiff was able to engage in certain minimal daily activities that clearly did not reflect an ability to engage in substantial physical activity. *Id.* at 955 (citing *Clifford*, 227 F.3d at 872; *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir.1989); 20 C.F.R. § 404.1572(c)).

The Commissioner argues that her position was nevertheless substantially justified because the ALJ properly considered a variety of factors. (Def.'s EAJA Resp. at 7.) Given this articulation, the Commissioner argues that she had a rational ground for thinking she had a rational ground for her action. (Def.'s EAJA Resp. at 7.) However, in light of the serious errors the ALJ committed—reliance on plaintiff's ability to perform minimal daily activities, contrary to clear circuit precedent and the agency's regulations, *id.* at 955 (citing *Clifford*, 227 F.3d at 872; 20 C.F.R. § 404.1572(c)); criticism of plaintiff for discontinuing the use of medications

without considering the reasons why, as required by the Commissioner's Rulings, *id.* (citing SSR 82–59); citation of an exhibit which allegedly contained a statement that conflicted with plaintiff's testimony, but in fact contained no such statement, *id.*; accusing plaintiff of seeking out pain medication without support in the record, *id.* at 955–56; selectively reading Dr. Yoder's records, *id.* at 956; and overlooking the objective medical evidence supporting plaintiff's complaints of pain, *id.* at 956–57—I cannot agree. *See Rohan,* at 768.

### 4. Hypothetical to VE

Finally, I concluded that the ALJ's hypothetical to the VE may have been incomplete. The hypothetical assumed that plaintiff could stand or walk for six out of eight hours, yet the medical report the ALJ credited limited plaintiff to two or three hours per workday on his feet. The hypothetical also did not include any restrictions on plaintiff's ability to work overhead, or perform repetitive pushing and pulling or precise assembly line type activities, limitations found by Dr. Jankus. *Samuel,* 295 F.Supp.2d at 957.

The Commissioner fails to address this issue in her response to plaintiff's fee application. The burden of proving substantial justification is on the government. That burden cannot be met with silence.[1]

### 5. Conclusion as to Substantial Justification

The Commissioner notes that the magistrate judge to whom the case was assigned commented that the ALJ "thoroughly" analyzed the evidence and recommended that the decision be affirmed. The Commissioner argues that this provides a strong indicator that her position was substantial-ly justified. (Def.'s EAJA Resp. at 7, citing *United States v. Paisley,* 957 F.2d 1161, 1168–68 (4th Cir.1992).)

 "While the decisions of intermediate judges may be relevant under the EAJA, they are not determinative. I must make my own determination on this issue." *Wates,* 288 F.Supp.2d at 949 (citing *Harris v. Barnhart,* 259 F.Supp.2d 775, 781 (E.D.Wis.2003); *Henderson,* 257 F.Supp.2d at 1168–69). In light of the above-discussion, I cannot conclude that the Commissioner's overall position was substantially justified. Therefore, plaintiff is entitled to a fee award under the EAJA.

### III. REASONABLENESS OF FEE REQUEST

Once the court has decided that an award is appropriate, it must determine whether the amount sought is reasonable.

In determining whether plaintiff's requested fees are reasonable I must examine both the rate and the number of hours requested. The EAJA allows for an award of "reasonable attorney fees ... based upon prevailing market rates for the kind and the quality of the services furnished" not to exceed "$125 per hour unless the court determines that an increase in the cost of living or a special factor ... justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Plaintiff must demonstrate the prevailing market rate and, if one is requested, show that a cost of living increase is warranted. *See Hanrahan v. Shalala,* 831 F.Supp. 1440, 1450 (E.D.Wis.1993). Plaintiff also has the burden to show that the number hours expended on the litigation was reasonable. *See Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76

---

1. In all fairness, the omissions from the hypothetical question are related to the errors previously discussed; thus, the Commissioner may have concluded that her discussion of those aspects of the case was sufficient to address this issue as well. Nevertheless, I did include the flawed question as a separate basis for remand.

L.Ed.2d 40 (1983). The reasonableness of the total fee request is evaluated in light of twelve factors set forth in *Hensley:*

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Henderson,* 257 F.Supp.2d at 1169 (quoting *Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. 1933).

Plaintiff requests fees in the total amount of $7884.76. This includes compensation for .5 hours of work performed by counsel in 2002, 20.95 hours in 2003, and 6 hours in 2004. Plaintiff seeks an increase in the $125 maximum hourly rate to $146.25/hour in 2002, $147.50/hour in 2003, and $148.75/hour in 2004. He justifies the increase by application of the "all items" consumer price index, calculating the increase in the cost of living from March 1996, when the $125/hour rate was set. Plaintiff also seeks compensation for 36.7 hours of work performed by counsel's paralegal. Paralegal time is billed at the rate of $100/hour. Finally, plaintiff seeks reimbursement of the $150 filing fee.

The Commissioner argues that the request is too high. She notes that prevailing parties should make a good faith effort to exclude hours that are excessive, redundant or otherwise unnecessary. (Def.'s EAJA Resp. at 8.) She points to several specific examples of improper charges: (1) a duplicative entry for counsel's time from May 20, 2002; (2) a charge for 0.4 hours by a paralegal preparing and mailing a request for an extension of time; and (3) 3.0 hours spent by counsel reviewing the administrative record on March 17, 2003, at which time plaintiff was awaiting a recommendation from the magistrate judge. Plaintiff's counsel responds that (1) the May 20, 2002 double entry was a mistake and he would withdraw the time, but even though it appeared on his time sheet it was not included in the EAJA motion; (2) it is not unusual to request an extension of time in a social security case, and 0.4 hours is not an excessive amount of time in which to do so; and (3) the 3.0 hours he spent reviewing the record was improperly entered with a date of March 17, 2003 when the work was actually performed prior to that.

■ The Commissioner's first objection is well-taken, but there is no need to subtract the May 20, 2002 double entry because it is not included in the request. However, I conclude that the other two objections lack merit. The Commissioner relies *Burr v. Bowen,* 782 F.Supp. 1285, 1290 (N.D.Ill.1992) in support of her second objection. In *Burr,* the court excised 2.81 hours spent by counsel obtaining extensions of time. However, counsel in that case did not respond to the Commissioner's objection to the time and apparently requested several extensions.[2] *Id.* In this case, conversely, plaintiff requested just one extension and spent a minimal amount of time. Extensions of time are regularly requested and granted in social security

---

**2.** Similarly, in *Bowman v. Secretary of HHS,* 744 F.Supp. 898, 900 (E.D.Ark.1989), the other case upon which the Commissioner relies, counsel requested two extensions and spent 1.0 and 1.5 hours, respectively, doing so.

cases in this district, in favor of both the Commissioner and the plaintiff-claimant. I see no failure of billing judgment in requesting compensation for the filing of such a motion in this case.[3] Further, I see no reason to question counsel's explanation concerning the March 17, 2003 entry. His time sheet discloses no similar entry prior to the filing of plaintiff's main brief. Therefore, this time will be allowed.

The Commissioner does not contest the hourly rates requested by counsel. Use of the consumer price index "all items" table has been accepted in this district, and plaintiff has properly demonstrated the prevailing market rate and that an increase in the $125/hour maximum hourly rate under the EAJA is warranted. *See Henderson,* 257 F.Supp.2d at 1170. Therefore, fees for counsel's work will be awarded at the rates requested.

However, the Commissioner argues that plaintiff has not justified the $100/hour rate requested for paralegal time. She states that while it is proper to use non-attorneys as a cost-saving measure, there are no savings if time is not billed at a substantially lower rate. She also contends that plaintiff's use of a non-attorney was inefficient. For example, the paralegal spent 9.7 hours on the reply brief, and counsel also spent 8.05 hours on the same document. (Def.'s EAJA Resp. at 9–10.)

I first address the proper hourly rate. Plaintiff relies on two recent cases from the Northern District of Illinois to justify his request. In *Sadler v. Barnhart,* No. 02–C–6891, 2004 WL 419908, at *2, 2004 U.S. Dist. LEXIS 2674, at *6–7 (N.D.Ill. Feb. 23, 2004), a case involving plaintiff's counsel and his paralegal, Judge Pallmeyer wrote:

Plaintiff seeks an award of $ 100.00 per hour for work performed by Paralegal Suzanne E. Blaz and Law Student Heather Aloe. Defendant objects to the hourly rate and asks the court to reduce it to $ 25.00 per hour. Plaintiff insists the rate is justified for each of these professionals. Ms. Blaz is a graduate of the University of Wisconsin, has completed paralegal training, and was scheduled to enter law school last fall. She has worked with Attorney Daley on Social Security matters for a year and a half and has excellent writing skills. Heather Aloe is a second-year law student near the top of her class at the Chicago–Kent College of Law, where she holds an editorial position with a law journal. Plaintiff notes that unlike the assistants whose work was at issue in *Victor v. Apfel,* No. 97 C 386, 1997 WL 733930, 1997 U.S. Dist. LEXIS 18664 (N.D.Ill. Nov. 18, 1997) and *Taylor v. Barnhart,* No. 00 C 7782, 2002 WL 31654944, 2002 U.S. Dist. LEXIS 22684 (N.D.Ill. Nov. 22, 2002), cited by Defendant, the work performed by Ms. Aloe and Ms. Blaz was substantive legal research and drafting. Finally, Plaintiff urges that the $ 100 rate he requests is supported by the Laffey Matrix, a nationwide survey of paralegal billing rates.

Defendant does not specifically address the Laffey Matrix, which Plaintiff presented only in his reply brief. The court notes that the Matrix suggests that paralegals employed in the Great Lakes Region (Illinois, Indiana, Michigan, Ohio, and Wisconsin) were billed at an average rate of $ 85 in 2002. Plaintiff is probably correct that Chicago-area paralegals are likely to command a rate high-

---

**3.** It is worth noting that the Commissioner requested extensions of time herself in this case. (R. 5, 8.)

er than average for this Region. He is also correct that rates would be expected to rise at least modestly since 2002. In the court's view, however, Plaintiff's calculations do not account for the fact that, regardless of their considerable talents, the paralegals here had comparatively brief experience. The Laffey Matrix demonstrates that paralegals with greater years of experience command higher billing rates. The court will reduce the amounts claimed for Plaintiff's paralegals to $ 85.00 per hour.

In *Embry v. Barnhart*, No. 02–C–3821, 2003 WL 22478769, at *2–3, 2003 U.S. Dist. LEXIS 19473, at *6–11 (N.D.Ill. Oct. 30, 2003) (footnotes omitted), a case also involving plaintiff's counsel, Magistrate Judge Brown wrote:

The Commissioner does object to the hourly rate of $ 100.00 that Plaintiff requests for the work done on this case by his attorney's law clerk (a second year law student) and a paralegal. While observing that the government welcomes the use of law clerks and paralegals as a cost-effective alternative to ever increasing attorney's fees, the Commissioner contends that the Plaintiff has failed to justify his request or demonstrate that $ 100.00 per hour is the prevailing rate for paralegals or law clerks performing this type of work. (Def.'s Resp. Pl.'s Pet. at 2.) The Commissioner cites to an unpublished minute order in *Brennan–Kenyan v. Barnhart*, No. 02 C 4230 (N.D.Ill. July 16, 2003) (Levin, M. J.), as demonstrating that the appropriate rate is no more than $ 85.00 per hour for paralegals. (Def.'s Resp. Pl.'s Pet. at 2; Ex. 1.) The plaintiff in *Brennan* was represented by the same attorney as the plaintiff here. However, the order setting the paralegal rate at $ 85.00 per hour does not provide any explanation for why that rate was awarded.

Plaintiff offers several arguments in support of a rate of $ 100.00 per hour. First, Plaintiff cites the so-called Laffey Matrix (the "Matrix"), which is a chart showing the hourly rates for attorneys of various experience levels and for paralegals and law clerks as prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. (Pl.'s Resp. Supp. Fee Pet. at 4; Ex. B). The notes accompanying the Matrix explain that it "is intended to be used in cases in which a 'fee shifting' statute permits the prevailing party to recover 'reasonable' attorney's fees." (*Id.* at Ex. B, Explanatory Note 1.) The Matrix shows that the prevailing rate for law clerks and paralegals in Washington, D.C. is $ 100.00 per hour.

The application of the Matrix to this situation is questionable. The notes state that it is to be used in cases involving fee shifting under 28 U.S.C. § 2412(b), but not in cases "in which the hourly rate is limited by statute." *Id.* (citing 28 U.S.C. § 2412(d)). As noted above, attorneys' rates are limited by § 2412(d)(2)(A). However, paralegal and law clerk rates are not set out in the statute. Thus, there appears to be no reason why the Matrix may not be used at least as a guide to the type of rate the government regularly accepts for paralegal and law clerk work. The Matrix describes rates for the Washington, D.C. area; neither party has cited a corresponding Matrix for the Chicago area. Plaintiff also cites *Wilson v. Principi*, 16 Vet.App. 509, 511 (2002), *reconsideration denied*, 17 Vet.App. 19 (2003) (per curiam), where the court approved a rate of $ 90.00 per hour for non-attorney EAJA fees; again, that rate was specific to Washington, D.C. *Bankston v. State of Illinois*, 60 F.3d 1249, 1255–56 (7th Cir.1995), also cited by Plaintiff, held that a partner in a small firm may be

compensated at the same rate as one in a large firm, even though a large firm might employ less expensive associates to perform the work instead. It does not suggest, however, that a paralegal may be compensated at a rate appropriate for a licensed attorney.

Finally, Plaintiff submits several surveys of billing rates for paralegals and law clerks showing that in the region including Chicago, paralegal rates range from $ 60.00 to $ 120.00 per hour, with an average of $ 85.00. (Pl.'s Resp. Supp. Fee Pet., Ex. C.) Plaintiff points out that these surveys include Illinois and surrounding states, and argues that a paralegal working in downtown Chicago should expect to be billed out at the high end of the spectrum. Plaintiff also points to a survey by the Illinois Paralegal Association suggesting that $ 110 would be an appropriate rate for the law clerk's time, and $ 125 would be an appropriate rate for the paralegal's time. (Pl.'s Resp. Supp. Fee Pet., Ex. D.)

After considering all of the above information, as well the guidance provided by the EAJA, which specifies a $ 125 rate limit for attorneys, it appears that an hourly rate of $ 95 for Plaintiff's law clerk and paralegal is appropriate. This rate takes into account the fact that the paralegal and law clerk who worked on this case are located in the comparatively-expensive market of Chicago, and compensates Plaintiff's attorney in a reasonable amount for his cost-efficient approach to staffing this case.

Other recent cases from the Northern District of Illinois have approved paralegal rates of $75/hour, *Henderson v. Barnhart,* No. 01–C–9621, 2004 WL 868396, at *3, 2004 U.S. Dist. LEXIS 6924, at *10 (N.D.Ill. April 20, 2004); *Schutt v. Massa-*

*nari,* No. 00–C–1370, 2001 WL 1155253, *3 n. 2, 2001 U.S. Dist. LEXIS 15491, at *10 n. 2 (N.D.Ill. Sept. 27, 2001); and $50/hour, *Holland v. Barnhart,* No. 02–C–8398, 2004 WL 419871, at *1–2, 2004 U.S. Dist. LEXIS 1364, at *6–7 (N.D.Ill. Feb. 3, 2004). I have found no Wisconsin cases discussing the appropriate hourly rate for paralegals. However, because counsel in the present case is based in Chicago, cases from the Northern District of Illinois would appear to provide the best measure of the reasonable value of such services.

■ For the reasons provided by Judge Pallmeyer, I conclude that a rate of $85/hour is reasonable. Judge Pallmeyer relied upon the Laffey Matrix, which is generally considered to accurately reflect the typical market rates for legal services. *See, e.g., Galloway v. Superior Court,* No. 91–0644, 1994 WL 162410, at *1–2, 1994 U.S. Dist. LEXIS 20730, at *4–5 (D.D.C. Apr. 21, 1994), *aff'd,* 57 F.3d 1101 (D.C.Cir. 1995). In the absence of any evidence from the Commissioner suggesting a lower alternate rate, I will award fees for paralegal time at the rate of $85/hour.[4]

However, the Commissioner does have a valid point concerning the manner in which counsel's paralegal assisted in the preparation of the reply brief. While the total amount of time spent on the reply brief does not, for the reasons stated in plaintiff's reply submission (Plt.'s EAJA Reply at 12–14), seem out of line, the documentation submitted reveals some redundancy in the time spent by counsel and the paralegal. *See Jenkins by Jenkins v. Missouri,* 127 F.3d 709, 716 (8th Cir.1997) (stating "that services that were redundant, inefficient, or simply unnecessary are not compensable"). For example, on 1/29/03 counsel and the paralegal both billed 2.10 hours

---

4. Plaintiff has not requested any variance in this rate based on an increase in the cost of living.

with the identical entry: "Finish first argument. Add case law, rules and regs to all." (Plt.'s EAJA Appen. Ex. C at [unpaginated] 1 & 3.) They also both billed 1.90 hours on that date under the entry: "Add additional theory to arguments, specify daily activities he can still perform."[5] (*Id.*) The use of non-attorneys saves money only when their efforts are not duplicated by counsel. Perhaps this time was not spent doing the same thing, but plaintiff, who bears the burden of demonstrating that his request is reasonable, has provided no explanation for the redundancy. Therefore, a reduction is appropriate. Since it appears that the paralegal had primary drafting responsibility for the brief, with counsel providing an outline and oversight, I will excise the 2.10 hours claimed by counsel on the first 1/29/03 entry. Since it appears that the paralegal's and the lawyer's time may not have totally overlapped pertaining to the second entry, and because adding "additional theory to arguments" seems to be an oversight function by counsel, I will subtract one hour from the paralegal's time on that item.[6]

## IV. CONCLUSION

For the foregoing reasons, plaintiff is entitled to fees in the total amount of $6780.51. In 2002, counsel spent .5 hours × $146.25/hour = $73.13. In 2003, counsel reasonably spent 18.85 hours [20.95—2.1] × $147.50/hour = $2780.38. In 2004, counsel spent 6 hours × $148.75/hour = $892.50. Counsel's paralegal reasonably spent 35.7 hours [36.7—1] × $85.00/hour = $3034.50.

THEREFORE, IT IS ORDERED that plaintiff's motion for an award of attorney's fees (Docket # 32) is **GRANTED**, and plaintiff's counsel, Frederick Daley, is awarded fees in the amount of $6780.51, and plaintiff is awarded costs in the amount of $150.00.

---

5. The last word in counsels' entry is cut off—"perfo." (*Id.* at [un-paginated] 1.) The paralegal's entry for that time contains the additional notation: "Indicate what arguments the Defendant did not even respond to!" (*Id.* at [un-paginated] 3.) Thus, there may not have been complete redundancy.

6. Finally, I conclude that the five hours requested for preparation of plaintiff's EAJA reply submission is reasonable. Counsel submitted a 15 page brief, which ably responded to the issues raised by the Commissioner.